652 A.2d 1222

IN THE MATTER OF MICHAEL R. IMBRIANI, A RETIRED JUDGE OF THE SUPERIOR COURT.

Submitted January 10, 1995—Decided February 14, 1995.

*Patrick J. Monahan, Jr.,* on behalf of Advisory Committee on Judicial Conduct.

*Donald R. Belsole,* attorney for respondent.

PER CURIAM.

The Advisory Committee on Judicial Conduct (ACJC) has conducted a formal hearing to consider charges alleging that Michael R. Imbriani (Respondent), formerly a Judge of the Superior Court of New Jersey, had engaged in conduct in violation of the New Jersey Constitution and various Canons of the Code of Judicial Conduct. The ACJC issued its Presentment on December 28, 1994, finding that Respondent had violated Article 6, Section 6, Paragraph 6 of the New Jersey Constitution, and the following Canons of the Code of Judicial Conduct:

Canon 1, which requires judges to personally observe high standards of conduct so that the integrity and independence of the judiciary may be preserved;

Canon 2A, which requires judges to respect and comply with the law and to act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary;

Canon 5C(1), which provides that a judge shall refrain from financial and business dealings that interfere with the proper performance of judicial duties and exploit the judicial position;

Canon 5C(2), which provides that a judge may not serve as an officer, director, manager, advisor, or employee of any business;

Cannon 6, which prohibits a judge from receiving compensation for extrajudicial activities;

and [has] engaged in conduct prejudicial to the administration of justice that brings the judicial office into disrepute. *Rule* 2:15–8(a)(6).

On the basis of the ACJC's Presentment, this Court on its own motion has filed a complaint permanently to remove Respondent from judicial office. *See N.J.S.A.* 2B:2A–3; *R.* 2:14–1. Respon-

dent, who retired May 1, 1994, consents to his removal from judicial office.

■ The Presentment discloses that the ACJC, on the basis of clear and convincing evidence, made the following findings:

Around 1963, Respondent formed a corporation known as Community Medical Arts Building, Inc. (CMAB) and acquired 12.5 percent of the issued common capital stock. In about 1970, he transferred his stock in CMAB to his wife, Claire Imbriani. By 1982 that interest had increased to 40 percent of the stock in CMAB because several shareholders had been bought out and their shares retired. At present the balance of the CMAB stock is owned by three individuals.

Since the creation of CMAB in 1963, Respondent assisted in the management of the affairs of that corporation and its primary asset, an office building known as the Community Medical Arts Building, 515 Church Street, Bound Brook, New Jersey. He received rent checks from the corporation's bookkeeper, assisted the bookkeeper in the payment of the corporation's bills, and assisted the corporation's accountant in filing tax returns. He performed other miscellaneous services for the corporation and the office building, including handling maintenance.

Between April 30, 1989 and June 1992, Respondent obtained certain rent checks made payable to CMAB by tenants of the Community Medical Arts Building, endorsed them, and deposited them to his own accounts. Respondent converted to his own use in this fashion approximately $98,037.49.

Between June 1987 and June 30, 1992, Respondent withdrew funds from CMAB's corporate bank account for non-corporate purposes and for his own uses. Such diversions amounted to approximately $26,000 up to May 1, 1992 and $2,973 between May 1, 1992 and June 30, 1992.

Respondent also issued certain checks drawn on CMAB's corporate account in payment of his own personal expenses. He issued other checks drawn on that account to himself and cashed them, applying the funds to his personal expenses. He issued still other of the corporation's checks to payees whom CMAB owed no money and then endorsed those checks in their names, using the funds for his own personal purposes.

One of the assets of CMAB was stock in the Hillsborough National Bank purchased in the early 1970's for between $10,000 and $25,000. That bank was subsequently acquired by United Jersey Bank, which issued its own stock in place of the Hillsborough National Bank stock. With the approval of the other shareholders, Respondent placed the United Jersey Bank stock in an investment account with Merrill Lynch. However, without the authorization of the shareholders of CMAB, he took funds from this account for his own personal purposes. The amount taken was between $15,000 and $35,000.

On September 12, 1992, Claire Imbriani endorsed her CMAB stock certificate and delivered it with a check for $50,000 to an attorney retained by the other shareholders. The $50,000 payment was intended to reimburse the other stockholders for some of the converted funds. Respondent had previously repaid $35,000.

On June 16, 1994, Respondent entered a plea of guilty in the Superior Court to a charge of Theft by Failure to Make Required Disposition of Property Received, in the third degree, contrary to the provisions of *N.J.S.A.* 2C:20–9, upon an accusation brought by the Attorney General on the basis of the aforementioned conversion of CMAB funds to Respondent's personal use. Respondent's plea of guilty was accepted by the Honorable Samuel D. Lenox, A.J.S.C.

As part of a plea arrangement reached with the Attorney General, Respondent agreed to pay restitution to the shareholders of CMAB in the amount of $173,-002.93, $85,000 of which had already been repaid. The plea agreement also provided that Respondent pay $5,314 in taxes on funds unlawfully obtained and perform 300 hours of community service.

   \*      \*      \*      \*      \*      \*      \*      \*

The Committee finds by clear and convincing evidence that by converting funds belonging to CMAB to his own use, Respondent violated Canons 1 and 2A of the Code of Judicial Conduct, and engaged in conduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of Rule 2:15–8(a)(6).

The Committee finds that Respondent managed the affairs of CMAB while serving as a Judge of the Superior Court. The Committee also finds that Respondent received funds from CMAB, including interest-free loans, in compensation for his activities in managing the corporation's affairs. By receiving such compensation for his activities on behalf of CMAB while serving as a Judge of the Superior Court, Respondent violated Article 6, Section 6, paragraph 6 of the New Jersey Constitution, Canon 5C(1), 5C(2), and 6 of the Code of Judicial Conduct, and engaged in conduct prejudicial to the administration of justice that brings the judicial office into disrepute, in violation of Rule 2:15–8(a)(6).

   \*      \*      \*      \*      \*      \*      \*      \*

Respondent informed the Committee that he took the money in question not to enhance his own lifestyle but to help make tuition payments for his five children, all of whom attended private colleges and went on to graduate or professional schools. As Respondent recognizes, his motives do not justify his actions. He knowingly violated the law, and his oath of office as a Superior Court Judge.

Respondent has a long and illustrious record of public service to this State. That record, however, cannot assuage the effect of the wrongdoing. Given Respondent's conduct, the Committee believes that the most severe disciplinary sanction should be imposed.

    Firmly established is the principle that "the most significant goal of judicial removal statutes is the preservation of the public's confidence in the judicial system." *In re Coruzzi*, 95 *N.J.* 557, 571–72, 472 *A.2d* 546 (1984). In recognition of that objective, we have held that for the purpose of judicial-removal proceedings a judge's criminal conviction is conclusive, both in respect of guilt

as well as the essential facts underlying the criminal charges. *Id.* at 572–73, 472 *A.2d* 546. Accordingly, Respondent's guilty plea to the third-degree offense of Theft by Failure to Make Required Disposition of Property Received, *N.J.S.A.* 2C:20–9, conclusively establishes both Respondent's guilt of that offense and the essential facts underlying the accusation, for purposes of this removal proceeding. Moreover, we are satisfied that the ACJC's findings, as summarized in the Presentment, are amply supported by the evidence adduced at the hearing before the ACJC.

We are fully cognizant of Respondent's long years of faithful and dedicated public service, and that Respondent has diligently and conscientiously discharged his judicial duties. However, our focus in this proceeding is determined solely by the public interest, *In re Yaccarino*, 101 *N.J.* 342, 396, 502 *A.2d* 3 (1985), and by our steadfast commitment to maintaining an independent and incorruptible judiciary. Respondent's conduct warrants his removal from judicial office. Respondent's resignation from judicial office effectuates his removal from the judiciary and vindicates our determination, based on the evidence before the ACJC, that Respondent's conduct is totally incompatible with continued judicial service. He shall not hereafter hold judicial office.

So ordered.

*For removal*—Chief Justice WILENTZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.

## ORDER OF REMOVAL

The Advisory Committee on Judicial Conduct having filed a presentment recommending that MICHAEL R. IMBRIANI, who retired from his position as a Judge of the Superior Court on May 1, 1994, be removed from judicial office for violations of Article VI, Section VI, Paragraph 6 of the New Jersey Constitution; *N.J.S.A.*

2C:20–9; *Canons* 1, 2A, 5C(1), 5C(2), and 6 of the *Code of Judicial Conduct;* and *Rule* 2:15–8(a)(6);

And respondent, through counsel, having waived his right to a hearing before the Supreme Court and having consented to his removal from judicial office;

And good cause appearing;

IT IS ORDERED that MICHAEL R. IMBRIANI is hereby removed as a Judge of the Superior Court, and he is hereby barred from holding any future judicial office.